UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KELLY SHANE PIFFERINI,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF EUREKA, et al.,<br><br>  Defendants. | Case No. 24-cv-09191-RMI<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 16 |

Now pending before the court is the motion (Dkt. 16) of Defendants City of Eureka, Brian Stevens, Victoria Graham, and Jon Omey[1] to dismiss Plaintiff Kelly Shane Pifferini's complaint (dkt. 1), and for clarification. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. For the reasons stated below, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART, and their motion for clarification is DENIED.

**I.   Background[2]**

Plaintiff is an unhoused resident of Eureka, California ("the City"). (Dkt. 1, p. 2). He "ha[s] no access to anywhere but public areas at all times" and cannot access indoor shelter or available public storage. *Id.* Accordingly, he and his possessions must be in public at all times. *Id.*

---

[1] Officer Graham's name is spelled "Grham" in the complaint, and Sergeant Omey's name is spelled "Omme." (Dkt. 1, p. 3). This order uses the spelling these Defendants use in their motion to dismiss.

[2] For purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Here, Plaintiff is the nonmoving party.

In 2019, the Ninth Circuit decided *Martin v. City of Boise*, 920 F.4th 584. *Martin* held that "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." *Id.* at 616. In response, the Eureka City Council amended its public camping laws. (Dkt. 1, p. 5). The resulting ordinance, Eureka Municipal Code ("E.M.C.") § 93.02, forbids involuntary camping[3] at certain specified locations.[4] E.M.C. §§ 93.02(B), (C)(2).[5] It provides that "[i]nvoluntary camping on public property is lawful when and where it is not otherwise unlawful" under the statute's provisions. *Id.* § 93.02(D).

However, E.M.C. § 93.02 does not go so far as to specifically designate the areas where involuntary camping *is* lawful. Indeed, the ordinance specifically declines to do so, stating that "[t]here is no specific site or sites that should be designated for camping because it is the experience of the city and other municipalities that sites where camping is continuous or camping populations are numerous become public health, environmental degradation, and policing problems." *Id.* § 93.02(A)(2). Plaintiff alleges that while the City Council said it would "add precise coordinates to the borders and boundaries of the[] prohibited areas, and would supply maps to show these locations[,]" it said it "would also make public statements that there would be no designated borders and boundaries for the portions of the public space where camping would be tolerated, and that no maps would be made of these legal camping areas." (Dkt. 1, p. 7). Plaintiff alleges that this leaves "all citizens clueless as to the whereabouts of these legal areas." *Id.*

Further, Plaintiff alleges that "police treat more than just the prohibited areas as unlawful for camping[]" and "enforce [camping in] all public areas as unlawful." (Dkt. 1, p. 7). Plaintiff claims that to prevent officers from directing campers to legal camping sites, the City refuses to

---

[3] "Camping by a person at such time as there is no accommodation accepting homeless persons within the city that is available for that same person." E.M.C. § 93.02(B).

[4] These include city parks, certain business districts, and areas within 75 feet of recreational trails. E.M.C. § 93.02(B).

[5] This court takes judicial notice of the text of the relevant statutes. *See P. Gas and Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1025 (N.D. Cal. 2002).

tell the police where the legal camping sites are. *Id.* at 8. Plaintiff further claims that the City "instruct[s] police to tell unhoused citizens that there is nowhere in Eureka where camping is legal." *Id.* at 9. Plaintiff asserts that the "city council was fully aware that the rules and regulations would never get to be used by any body [sic] and that this way nobody would ever be able to gain access to a portion of public where any type of camping could take place." *Id.* at 7–8. Indeed, Plaintiff claims that "not a single person has ever been aloud [sic] by the police to actually involuntarily camp." *Id.* at 9. Therefore, Plaintiff alleges that the City's passage and enforcement of E.M.C. § 93.02 has violated his Eighth Amendment rights under *Martin. Id.* at 8.

Plaintiff states that Officer Graham "harassed" him for violations of E.M.C. § 93.02, which he says is "a common EPD practice." (Dkt. 1, p. 12). Further, he alleges that Officer Graham has never offered him shelter during these encounters "because all of our encounters occurred before 5pm, and there is no sheltering service open until 5pm everyday." *Id.*

Plaintiff also takes issue with another Eureka ordinance, E.M.C. § 130.14. This ordinance forbids storage of personal property in public areas. E.M.C. § 130.14(C). The ordinance defines "store" as "to put aside or accumulate for use when needed, to put for safekeeping, and/or to place or leave in a location." *Id.* §130.14(B). Under the ordinance, "[p]ersonal property placed in public areas shall be deemed to be stored personal property if it has not been removed from public areas within 24 hours of service of written notice, requiring such removal." *Id.* § 130.14(C)(3). However, "[m]oving personal property to another location in a public area or returning personal property to the same block on a daily or regular basis" is not considered removal. *Id.* Such property may be removed and impounded after the 24 hours have passed. *Id.*

E.M.C. § 130.14 contains some exceptions to the general rule. Property left within 10 feet of entrances, exits, driveways, and loading docks may be removed without prior notice if post-removal notice is given. *Id.* § 130.14(C)(4). The same is true of property left in an area with a posted closure time after the area has closed. § 130.14(C)(5). Contraband and evidence of crimes may be immediately removed without prior notice. *Id.* § 130.14(C)(8). Property which poses "an

3

immediate threat to the health or safety of the public" or is "bulky"[6] may be immediately removed without prior notice and discarded. *Id.* § 130.14(C)(6)–(7).

Both pre- and post-removal notices under § 130.14 must contain "[t]he location where the removed personal property will be" stored or located, "including a telephone number and internet website of the city through which a person may receive information as to impounded personal property[.]" E.M.C. §§ 130.14(D)(1)(g), (D)(2)(d). Pre-removal notices must also state "that the personal property will be impounded if not removed from public areas within 24 hours." *Id.* § 130.14(D)(1)(d). Impounded property "shall be stored by the city for 90 days" and notices must state that the property may be discarded after that time. *Id.* §§ 130.14(D)(1)(h), D(2)(e), (F)(2).

Plaintiff alleges that § 130.14 "allows police officers to seize an unhoused person's property for simply using those items in a public place." (Dkt. 1, p. 10). He states that "[whe]ther those items are left unattended, or in a person's possession, police can seize such property, and in most cases immediately discard those items as trash." *Id.* He states that the ordinance makes it "unlawful for me to even part ways with my possessions long enough to even enter a building or establishment" to shop, receive services, or appear in court. *Id.* However, he alleges that having all of his property in his possession at all times puts him in violation of the camping ordinance, which he interprets as "mak[ing] it unlawful to possess any camping items in public." *Id.* at 11.

Plaintiff claims that City police issue notices and seize property under § 130.14 even when the property is not being "stored in public" within the meaning of that statute. (Dkt. 1, p. 11). Plaintiff alleges that City police "allow[] housed citizens to store personal property in public areas[,]" whether "to leave these items unattended momentarily while in side [sic] an establishment, or for days, weeks, months and some times [sic] even years on the public streets." *Id.* at 11–12, 20. By contrast, "[u]nhoused citizens are not allowed to have any more possessions than a person can carry in their hands, and any personal property that has to be set on the ground, or left unattended is considered to be stored in public" and "can and will be seized by the city and

---

[6] Defined as "[a]ny item, with the exception of a rent [sic], that is too large to fit in one of the city's 60 gallon trash containers with the lid closed[.]" E.M.C. § 130.14(B).

the police." *Id.* at 15.  For instance:

> A housed citizen with a baby stroller out in public with a baby in it is allowed, but a baby stroller full of an unhoused citizens [sic] possessions is unlawful and can be seized immediately as a bulky item, without any notice, and immediately discarded as trash. Whether the item is accompanied by its owner, or left unattended.

*Id.* at 20.  When notices are issued, Plaintiff says they are often "confusing[,]" giving a 72-hour removal period instead of the statutory 24-hour period and omitting information about the length of time property will be held and how to reclaim it.  *Id.* at 12.

Plaintiff alleges that he has "had a loss of property of more than $8,000 at the hands of" E.M.C. § 130.14.  (Dkt. 1, p. 23).  Additionally, he has been forced to "forfeit my entire life agenda in order to at all times accompany my personal possessions[.]"  *Id.*

Plaintiff specifically names Officer Graham as an officer who gave him these defective notices.  (Dkt. 1, p. 12).  He states that she gave him five such notices during three encounters in late 2023 and early 2024.  *Id.* at 13.  In at least one instance, Graham "hand[ed] a notice directly to me the owner, while my personal property was in my possession the entire time."  *Id.* at 26.  Ultimately, he alleges that Officer Graham had an arrest warrant issued for him "under false pretenses, resulting in my arrest on" February 12, 2024.  *Id.* at 13.

On that day, Plaintiff was at a picnic table in the park when Sergeant Omey arrested him "for two fish and game codes for having my bike and trailer parked close to the water."  (Dkt. 1, p. 12).  Before his arrest, Plaintiff left his belongings with a friend.  *Id.*  However, Plaintiff says that Omey "forced my friend to leave the area and would not let him take my things with him as I wished him to."  *Id.*  Omey seized Plaintiff's property without a homeless liaison or supervisor present, a violation of City police policy.  Further, the property was not stored for the required 90 days.  *Id.*  Elsewhere, Plaintiff alleges that Omey discarded Plaintiff's possessions at the dump, although it is unclear whether these were the possessions seized after the February 12 arrest or other items of Plaintiff's seized at another time.  *Id.* at 27.  Plaintiff also alleges that Sergeant Omey "entered my home without probabl[e] cause, and without a search and seizure warrant."  *Id.* at 26.

Plaintiff alleges that Chief of Police Brian Stevens and the City Council have directed "all

5

1   EPD officers" to "incorrectly and unconstitutionally enforce[] both of the ordinances in question."

2   (Dkt. 1, p. 11).  He further alleges that "Brian Stevens is the chief of police and has failed to

3   properly train and supervise all officers and instead allows for the unconstitutional enforcement of

4   the two ordinances in question." *Id.* at 25.

5       Finally, Plaintiff alleges that "[a]n unknown city worker violated my 1st amendment by

6   stopping my protest and destroying my signs impeding on my freedom of speech and my right to

7   assemble." (Dkt. 1, p. 29).

## II. Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although a plaintiff need not include detailed factual allegations in a complaint, the complaint must do more than recite elements of a cause of action and state conclusions; rather, a plaintiff must state factual allegations sufficient to raise the entitlement to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must proffer "enough facts to state a claim to relief that is plausible on its face[]" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*, *id.* at 570.

## III. Anti-Camping Ordinance (E.M.C. § 93.02)

Defendants argue that Plaintiff's Eighth Amendment claims regarding Eureka's anti-camping ordinance should be dismissed in light of the Supreme Court's recent decision in *City of Grants Pass v. Johnson*, 603 U.S. 520 (2024).  The court agrees.

In *Grants Pass*, the Supreme Court overturned the Ninth Circuit's *Martin* decision in relevant part. *Id.* at 542.  Specifically, it held that "[t]he Cruel and Unusual Punishments Clause [of the Eighth Amendment] focuses on the question [of] what 'method or kind of punishment' a government may impose after a criminal conviction, not on the question [of] whether a government may criminalize behavior in the first place[.]" *Id.* (quoting *Powell v. Texas*, 392 U.S. 514, 531–32 (1968) (plurality op.))  The Supreme Court determined that a law against camping on any public property within the City of Grants Pass did not criminalize the mere status of being homeless because under that law, "it makes no difference whether the charged defendant is

homeless, a backpacker on vacation passing through town, or a student who abandons his dorm room to camp out in protest on the lawn of a municipal building." *Id.* at 546–47. While repeated violations of the Grants Pass ordinance could result in a temporary camping ban, and violation of that ban could result in "a criminal punishment of up to 30 days in jail and a larger fine[,]" the Supreme Court held that such punishment was not "cruel and unusual." *Id.* at 543. Accordingly, the Court concluded that "the Eighth Amendment [is] a poor foundation on which to rest the kind of decree [which] the Ninth Circuit has endorsed since *Martin*." *Id.* at 542.

In this case, Plaintiff alleges that E.M.C. § 93.02 is enforced as a total ban on camping on public property. However, *Grants Pass* held that such bans do not violate the Eighth Amendment. E.M.C. § 93.02, as written, does not criminalize the status of homelessness; indeed, it subjects so-called "voluntary campers" who have access to alternative accommodations to more restrictions than "involuntary campers" for whom no shelter is available. E.M.C. §§ 93.02(B), (C)(1)–(2), (D). And the fines imposed for violations of E.M.C. § 93.02, which are capped at $50.00 for a third or subsequent violation within one year, are less severe than the potential punishments under the Grants Pass ordinance which the Supreme Court held to be constitutional. *Id.* §(F)(3). Accordingly, in light of *Grants Pass*, Plaintiff's Eighth Amendment challenge to E.M.C. § 93.02 must fail.

Plaintiff also argues that E.M.C. § 93.02 criminalizes mere *possession* of camping paraphernalia in public. He further argues that, by virtue of being homeless and by operation of E.M.C. § 130.14, he is compelled to possess his camping paraphernalia (along with all of his other belongings) in public. The upshot appears to be that the statutory scheme criminalizes Plaintiff for the status of being homeless because, as a homeless person, he has no choice but to violate it. However, as Defendants point out, the plain text of E.M.C. § 93.02 governs only the "use [of] camp paraphernalia[,]" not its mere possession. E.M.C. § 93.02(B). Plaintiff has not alleged that Defendants enforce E.M.C. § 93.02 as a ban on mere possession as opposed to a ban only on use. And *Grants Pass* makes clear that a city may prohibit an "act [which] society has an interest in preventing[,]" even when "the defendant's act 'in some sense' might be described as 'involuntary' or 'occasioned by' a particular status." 603 U.S. at 548 (quoting *Powell*, 392 U.S. at 532). As a

7

city may permissibly regulate camping in public, the use of camping equipment is an act which can be prohibited. Accordingly, Plaintiff has not stated an Eighth Amendment claim on this theory, either.

For the foregoing reasons, Plaintiff's challenges to E.M.C. § 93.02 must fail.

## IV.     Storage of Personal Property (E.M.C. § 130.14)

For purposes of this motion to dismiss, Defendants do not contest Plaintiff's claims that

> (1) The ordinance [§ 130.14] is enforced differently against housed and unhoused citizens in violation of the Equal Protection Clause of the Fourteenth Amendment; (2) The Bulky Item's [sic] provision permits unreasonable searches and seizures in violation of the Fourth Amendment; or that (3) The Bulky Item's [sic] provision does not require notice in violation of the Due Process Clause of the Fourteenth Amendment.

(Dkt. 16, p. 12).[7]

Defendants do, however, argue that Plaintiff has failed to state a claim relating to this ordinance. First, Defendants appear to claim that Plaintiff lacks standing to challenge § 130.14's notice provision.[8] This is so, they assert, because Plaintiff does not contend that the ordinance's procedures violate due process, nor does he contend that any of his property was ever seized pursuant to deficient process. *Id.*

The court agrees with Defendants in part, specifically as it relates to Plaintiff's ability to seek money damages for a due process violation relating to the notice provision. Plaintiff does not allege that the notice provision is unconstitutional as written. It is true that even if the procedures set forth in an ordinance comply with due process, the actual procedures used by officers can violate the Fourteenth Amendment. *See, e.g., Sanders v. City of San Diego*, 93 F.3d 1423, 1430 (concluding "that the statutory procedures [at issue] satisfy due process" but "find[ing] that the district court erred in granting summary judgment on the issue of whether the City in fact

---

[7] Citations to docketed documents use the pagination automatically added by CM/ECF, which may differ from the document's original numbering.

[8] Defendants specifically assert that the ordinance is "constitutional as applied to Plaintiff." (Dkt. 16, p. 19). However, in context, Defendants seem to be challenging Plaintiff's standing—that is, whether Plaintiff has suffered a concrete, particularized, and actual or imminent "injury in fact" which is "fairly traceable" to Defendants' actions and can be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

8

complied with these procedures[]"). However, Plaintiff has not alleged that any of his property was seized with insufficient notice. While he does allege that he has received insufficient notice in the past, and also that he has been permanently deprived of $8000 worth of property under this ordinance, he has not alleged that he received insufficient notice and was *then* permanently deprived of his property *as a result*. Therefore, Plaintiff has not shown that he lost anything due to a lack of notice, and so he has not stated a claim for money damages based on deficient notice.

However, Plaintiff's allegations do make out a case for injunctive relief. The Supreme Court has sometimes "found standing based on a 'substantial risk' that the that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n. 5 (2013). In these circumstances, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Here, Plaintiff has alleged facts which indicate there is a "substantial risk" that his property will be seized without due process. He alleges that if he ever needs to set property on the ground or leave it momentarily unattended to enter a building, it "can and will be seized by the city." He further alleges that he is forced to carry all of his property with him at all times, which results in him having to "forfeit my entire life agenda" to prevent the property's seizure, thereby incurring costs in order to mitigate the risk of harm. Accordingly, Plaintiff may pursue injunctive relief to prevent the city from using inadequate process when seizing his belongings.

Next, Defendants argue that Plaintiff has not alleged that the health-and-safety exception to § 130.14's notice provision is unconstitutional. Plaintiff claims that this provision "provides no definition or guidance of what is considered to be a health and safety threat. Instead this provision relies solely on the opinion of an officer as to what exactly qualifies as a threat." (Dkt. 1, p. 17). Several district courts in the Ninth Circuit have held that similar health and safety exceptions to notice provisions are constitutionally permissible. *Janosko v. City of Oakland,* 2023 WL 3029256, at *4 (N.D. Cal. April 19, 2023) (rule allowing for destruction of "only belongings that are hazardous or dangerous to move or store" was "not an arbitrary policy" but a "reasonable"

carveout"); *Garcia v. City of Los Angeles*, 611 F. Supp. 3d 918, 934 (C.D. Cal. 2020) ("The phrase 'immediate threat to public health and safety' is not vague on its face."). However, Plaintiff's claims relating to this exception fail for a more fundamental reason: he has not alleged that he has ever had any property confiscated without notice under the health-and-safety exception. Therefore, Plaintiff's complaint does not show that he has standing to challenge it, so the claim about the health-and-safety exception must be dismissed.

Defendants further argue that Plaintiff has not alleged that the bulky items exception is "unconstitutional as applied to Plaintiff." (Dkt. 16, p. 20 (some capitalization omitted)). Despite the phrasing, Defendants appear to actually be arguing that Plaintiff lacks standing to challenge this provision. *See id.* ("Plaintiff has not alleged that he had any property seized without notice pursuant to this section."); *cf. supra* n.8. Indeed, Plaintiff does not allege that any of his items were seized under the bulky items exception. Accordingly, Plaintiff's claims about this exception must be dismissed.

Finally, Defendants say Plaintiff has not shown that the evidence-of-a-crime exception is unconstitutional. Their argument on this front is twofold. First, they claim that the statute has never unconstitutionally been applied to Plaintiff. The court's review of the complaint shows no plausible allegations that Plaintiff's property was seized under this provision. To be sure, it is possible that Plaintiff's bike and trailer were seized under this provision when he was arrested, as they could have been considered "evidence" of the parking violation. However, the complaint does not allege this, and the bike and trailer could have been confiscated for any number of other reasons. Accordingly, Plaintiff has not shown that he has suffered damages from the evidence-of-a-crime exception. *Twombly*, 550 U.S. at 555 (plaintiffs must state factual allegations sufficient to raise their entitlement to relief "above the speculative level[]").

As discussed above, a plaintiff who has not yet been damaged by a law may seek to enjoin it if they are at an "imminent and substantial" risk of being harmed by it. Plaintiff argues that he is in constant danger of having his belongings seized without notice pursuant to this exception because it is illegal to store property in public areas, meaning that any property stored in public areas can be seized without notice as evidence of that crime. However, this would render §

10

1    130.14's notice provisions entirely inoperative. The Ninth Circuit has held that "courts must

2    construe a statute 'so that effect is given to all its provisions, so that no part will be inoperative or

3    superfluous, void or insignificant.'" *In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024) (quoting

4    *Corley v. United States*, 556 U.S. 303, 314 (2009)). Construing § 130.14 as Plaintiff suggests

5    would make most of the ordinance's language "inoperative or superfluous, void or insignificant."

6    Because the court cannot construe § 130.14 this way, and because Plaintiff has not alleged that §

7    130.14 is being enforced in this way, the court cannot conclude that there is an imminent or

8    substantial risk of Plaintiff's belongings being seized without notice under this reading.

9        In a similar vein, Plaintiff argues that having to constantly carry his possessions puts him

10   in perpetual violation of the public camping ordinance. To the extent Plaintiff is arguing that this

11   may cause authorities to seize his belongings without notice as evidence of a crime, the court

12   disagrees. The plain language of E.M.C. § 93.02 forbids only the use, not the possession, of

13   camping paraphernalia. As Plaintiff has not alleged that Eureka police are enforcing § 93.02

14   against people who merely possess camping paraphernalia, the court cannot conclude that Plaintiff

15   is at an imminent or substantial risk of having his belongings seized without notice under this

16   provision, either.

17       For the foregoing reasons, Plaintiff's constitutional claims regarding the Ordinances must

18   be dismissed, except for Plaintiff's claim for injunctive relief against the City's violations of due

19   process when seizing items under § 130.14.

20       **V.     Liability of Individual Officers**

21           *a.   Official Capacity Claims*

22       Defendants argue that Plaintiff's official-capacity claims against the individual Defendants

23   should be dismissed because they are redundant of Plaintiff's claims against the City. Defendants

24   are correct that "[a]s long as the government entity receives notice and an opportunity to respond,

25   an official-capacity suit is, in all respects other than name, to be treated as a suit against the

26   entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). For his part, Plaintiff does not object to

27   dismissing the individual defendants in their official capacities "as long as the liability is

28   transferred over to the city." (Dkt. 23, pp. 9, 11). And the liability, if Plaintiff is successful,

would be transferred to the City: "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham*, 473 U.S. at 169. Therefore, the court will dismiss Plaintiff's claims against the individual defendants in their official capacities.

      *b. Officer Graham*

Defendants argue that Plaintiff has not alleged a claim against Officer Graham regarding the confiscation notices because Plaintiff has not alleged that his property was ever confiscated pursuant to such a notice. As stated above, because Plaintiff has not alleged that his property was actually confiscated under such a notice, the only relief he has standing to obtain is an injunction prohibiting Officer Graham from confiscating his property without adequate notice.

Defendants further argue that Plaintiff has not sufficiently alleged that Officer Graham "harassed" him while enforcing the anti-camping ordinance. The court agrees. Plaintiff has not detailed exactly how Officer Graham is supposed to have harassed him. Simply stating that Officer Graham committed harassment pleads a legal conclusion, which is insufficient to survive a motion to dismiss. *Twombley*, 550 U.S. at 555.

Similarly, Defendants argue that Plaintiff has not demonstrated the "false pretenses" underlying his arrest warrant. The court agrees with this assessment. While Plaintiff's response to the motion to dismiss includes more details about the alleged falsehood, the court is not allowed to consider Plaintiff's response when evaluating the adequacy of his complaint for purposes of a motion to dismiss. *City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012) ("[A] court cannot consider evidence outside the pleadings without converting the motion to dismiss into one for summary judgment and giving the opposing party an opportunity to respond."). This is a problem for Plaintiff because "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Because Plaintiff does not specifically state *in his complaint* which pretenses in the warrant were false, Plaintiff has failed to state a claim that Officer Graham arrested him under false pretenses. Therefore, Plaintiff's claims against Officer Graham relating to the false arrest warrant must be dismissed.

      *c. Chief Stevens*

Plaintiff alleges that "Brian Stevens is the chief of police and has failed to properly train and supervise all officers and instead allows for the unconstitutional enforcement of the two ordinances in question." (Dkt. 1, p. 25). Defendants argue that Chief Stevens took no actions in his individual capacity which would warrant § 1983 liability. In his response, Plaintiff states that "as long as this claim gets transferred over to the city then I would have no objections to the dismissal of Chief Stevens from being named in this lawsuit." (Dkt. 23, p. 9).

Here, it appears that to the extent a claim can be stated against Chief Stevens in his individual capacity, a claim could also be stated against the city. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (internal citation omitted). Similarly, a municipality can be held liable for omissions such as failing to train or supervise officers, as well as for constitutional injuries inflicted by its "official policies or established customs." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). Importantly, a municipality is also liable when an official with final policy-making authority either commits or ratifies the constitutional violation. *Clouthier*, 591 F.3d at 1250. "As to matters of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Because it appears that Plaintiff's claims against Chief Stevens could also be brought against the City, the Court will grant Plaintiff's request to voluntarily dismiss Chief Stevens from the case.

    *d. Sergeant Omey*

Defendants argue that, because Plaintiff does not contest that he violated the fish and game code or that his property could be seized when he was arrested, Plaintiff has not stated a claim against Sergeant Omey. However, "even when supported by probable cause, a search or seizure may be invalid if carried out in an *unreasonable* fashion." *Franklin v. Foxworth*, 31 F.3d 873, 875

(9th Cir. 1994). For example, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *U.S. v. Jacobsen*, 466 U.S. 109, 124 (1984) (internal quotations omitted). Accordingly, the fact that Plaintiff's property could legally have been seized does not mean that the particular way in which it was seized did not violate Plaintiff's Fourth Amendment rights.

Defendants are, however, correct that Plaintiff does not argue or allege that the actual confiscation of his property at the arrest was unreasonable. Further, Plaintiff has not alleged that this property was actually confiscated or that, if confiscated, it was destroyed. While Plaintiff argues that Sergeant Omey's actions violated City law and policy, the "reasonableness" standard for searches does not take account of local laws. *See Virginia v. Moore*, 553 U.S. 164, 178 (2008) ("[I]t is not the province of the Fourth Amendment to enforce state law.") Accordingly, Plaintiff has not proffered enough facts to indicate beyond a speculative level that the seizure violated Plaintiff's rights.

Defendants argue that because Plaintiff does not allege the ultimate fate of his belongings (i.e., whether they were seized, stored, destroyed, or left in Plaintiff's possession), Plaintiff has not stated a Due Process claim under the Fourteenth Amendment. While Plaintiff does allege that Omey "discarded my items at the dump" (dkt. 1, p. 27), it is unclear which items Plaintiff is talking about. Even assuming that Plaintiff is talking about the belongings seized at this arrest, Plaintiff does not allege that the belongings were discarded without notice or an adequate waiting period. Accordingly, Plaintiff has not stated a claim on this theory, either.

Defendants further argue that because Plaintiff alleges that Omey entered his home without a warrant but arrested him pursuant to a warrant, and because Plaintiff does not allege more than one interaction with Omey, Omey permissibly entered Plaintiff's home to arrest Plaintiff. *Id.* As Plaintiff states that he is unhoused and that Omey arrested him in the park, the court cannot infer that these interactions were the same incident. However, because Plaintiff provides no detail about the home-entry incident besides the fact that Omey lacked a warrant and the legal conclusion that Omey lacked probable cause, Plaintiff has not pled sufficient detail to give

14

Defendants adequate notice of his claim. Therefore, Plaintiff has not stated a claim against Omey for warrantless entry into Plaintiff's home.

The court notes that, as with his claims against Officer Graham, Plaintiff provided more detailed allegations against Officer Omey in his response to Defendants' motion to dismiss. However, as discussed above, in order for the court to consider this additional information, it needs to be incorporated into a complaint.

Accordingly, Plaintiff's claims against Sergeant Omey in his individual capacity must be dismissed.

###### e. Qualified Immunity

Defendants argue that they are entitled to qualified immunity in their individual capacities. However, the Ninth Circuit has cautioned that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citing *Kwai Fun Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004)). Here, Plaintiff's allegations of fact are barebones and will generally need to be repleaded if Plaintiff wishes to proceed with most of his claims. In order to ensure an informed and accurate ruling, the court will defer consideration of qualified immunity until more fulsome factual allegations are put forth or a factual record is developed.

**VI.    Manner of Dismissal**

When dismissing a claim, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). This court concludes that Plaintiff's Eighth Amendment challenge to § 93.02, the anti-camping ordinance, is not viable as a matter of law after *Grants Pass* and must therefore be dismissed with prejudice. However, Plaintiff will be granted leave to amend his other claims by filing an amended complaint. <u>If Plaintiff wishes to file an amended complaint, he should do so within 60 days of the issuance of this order.</u>

**VII.    Motion for More Definite Statement**

Defendants assert that "Plaintiff's Complaint is so deficient that Defendants cannot

15

1 determine the sufficiency of Plaintiff's claims and a more definite statement should be required."

2 (Dkt. 16, p. 22). Accordingly, they have moved for a more definite statement.

3 "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The grant or denial of a 12(e) motion is within the court's discretion. *Griffin v. Cedar Fair, L.P.*, 817 F.Supp.2d 1152, 1154 (N.D. Cal. 2011). Here, because Plaintiff will have the opportunity to file an amended complaint to remedy the lack of specificity in his original allegations, the court does not currently feel it necessary to formally order a more definite statement. Accordingly, this motion is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: August 4, 2025

_____
ROBERT M. ILLMAN
United States Magistrate Judge