United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

KELLY SHANE PIFFERINI,
Plaintiff,
v.
CITY OF EUREKA, et al.,
Defendants.

Case No. 24-cv-09191-RMI

**ORDER ON MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Re: Dkt. No. 68

Pending before the court is a motion to dismiss, Dkt. 68, per Federal Rule of Civil Procedure 12(b)(6) the Fourth Amended Complaint, Dkt. 66. The motion was filed by Defendants Jon Omey, Donald Wilkes, Cole Forbes (collectively the "Individual Defendants"), and the City of Eureka (the "City") (all collectively "Defendants"), against Plaintiff Kelly Pifferini. Plaintiff has responded in opposition, Dkt. 69, and Defendants have replied, Dkt. 71. For the reasons explained herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTS & BACKGROUND

Pifferini is an unhoused resident of Eureka, California. Fourth Amended Complaint ("4AC") ¶ 3, Dkt. 66. Donald Wilkes and Cole Forbes are Eureka Public Works employees, and Jon Omey is a Eureka Police Department officer. 4AC ¶ 7. Plaintiff's claims arise from his "contacts with City employees and Eureka Police Department personnel concerning his presence in public areas, his personal property, and his political expression concerning municipal policies affecting unhoused residents." 4AC ¶ 5.

### A. Police Interactions and Notices to Vacate

Between October 2023 and February 2024, Plaintiff had many interactions with Eureka Police Department officers and other City employees, including during an arrest in October 2023.

4AC ¶¶ 5, 26, 40. On October 19, 2023, Plaintiff was approached by Ranger Graham[1] near an encampment along the Waterfront Trail and informed that he was trespassing and needed to leave. 4AC ¶¶ 26–28. An argument ensued, and Graham called for police assistance. 4AC ¶¶ 29–31. The disagreement concerned how long until Plaintiff had to leave and whether he was provided adequate notice. 4AC ¶¶ 28, 33. Plaintiff told Graham and the police officers,[2] now on scene, that he did not personally receive any notice to vacate until that moment, so he believed he had 72 hours to vacate; the City employees stated that a notice had previously been posted such that Plaintiff had to vacate immediately. 4AC ¶¶ 28–29, 32–36. Sergeant Eckert informed Plaintiff that he was enforcing Fish and Game Code violations, not the City camping ordinance, and after consulting with his superiors, Eckert arrested Plaintiff for the Fish and Game Code violations. 4AC ¶¶ 34, 37–40. Plaintiff was taken to jail and later released, and the criminal charges were later dismissed. 4AC ¶ 41.

Over the next few months, Plaintiff continued to have contacts with City employees, during which time he was issued six administrative notices or formal warnings. 4AC ¶¶ 16, 49–52. Ranger Graham routinely told Plaintiff that he was engaged in unauthorized camping or violating some other municipal guidelines. 4AC ¶¶ 44–45. But, Plaintiff kept his belongings on a “bicycle-and-trailer arrangement” and did not remain overnight at those specific locations, so he maintained that Graham was misapplying the municipal camping code since she could not know whether he was in fact camping. 4AC ¶¶ 43, 46–48; 54–55. Officer Jon Omey was Ranger Graham’s supervisor for these incidents “and maintained administrative oversight of those responses.” 4AC ¶¶ 50, 53, 132.

Notices to vacate are issued pursuant to Section 130.14 of the Eureka Municipal Code (“E.M.C.”), which governs the storage of personal property in public areas. 4AC ¶ 8. Section 130.14(C)(3) provides that:

> Personal property placed in public areas shall be deemed to be stored personal property if it has not been removed from public areas within 24 hours of service of written notice, requiring such removal. Moving personal property to another location in a public area or returning personal property to the same block on a daily or regular basis shall

---

[1] Ranger Graham is no longer a defendant in this case.

[2] Officer DT was never named a defendant, and Sergeant Eckert is no longer a defendant in this case.



United States District Court
Northern District of California

> not be considered to be removing the personal property from a public area. The city may remove and impound such stored personal property after providing 24 hours written notice.

E.M.C. § 130.14(C)(3). Additionally, "personal property placed in a public area [that] poses an immediate threat to the health or safety of the public"; "bulky items placed in a public area"; and "[e]vidence of a crime or contraband" in a public area "may be removed without prior notice and discarded." *Id.* § 130.14(C)(6)–(8). When notice is required, pre-removal notice is effectuated when "written notice is served on the person storing the personal property, or is posted conspicuously on or near the personal property." *Id.* § 130.14(D)(1). These pre-removal notices must contain, among other things, the 24-hour impoundment statement. *See id.* § 130.14(D)(1)(a)–(h).

In practice, the "Notice to Vacate" form states, "It is a violation of law to camp on public or private property within the City of Eureka. It is also a violation of law to encroach or obstruct any public right of way and/or to store personal property on public land. All personal property must be removed immediately." 4AC ¶¶ 13, 19. The form also states that property remaining after 72 hours of the notice will be removed, booked by the City, and can be reclaimed within 90 days by calling a provided phone number. 4AC ¶¶ 14, 19. The notice clarifies that simply moving the personal property to another public area in the City does not constitute compliance. 4AC ¶¶ 15, 20. While the form bears the Eureka Police Department logo, Plaintiff alleges that the notices are routinely issued by other, unsworn City employees. 4AC ¶ 21.

E.M.C. Section 130.14 was passed by the Eureka City Council on August 2, 2016, as Ordinance 844-C.S. 4AC ¶¶ 12, 22. During that council meeting, both the City Attorney and City Manager stated that they did not know the precise language that would be used in the notices to vacate. 4AC ¶¶ 23–24. The City Council approved the ordinance regardless. 4AC ¶ 25.

**B. "Chalk Talk" Political Displays**

Over the course of three years, Pifferini regularly put handwritten chalk messages on the Waterfront Trail pavement to express his political views on the municipal treatment of unhoused community members. 4AC ¶¶ 56–57, 59. Wilkes saw these chalk messages while performing his routine work duties along the trail, and for those three years, during the summer months, repeatedly used a municipal water truck to wash away the chalk. 4AC ¶¶ 58–60.



United States District Court
Northern District of California

Plaintiff also alleges that the deployment of a municipal water truck required administrative authorization, which the City logs in its municipal records, such as vehicle tracking, water usage logs, and staff assignments. 4AC ¶ 61. "Given the scale, resource allocation, and multi-year repetition of these erasure operations, [] Wilkes did not act on his own isolated initiative; rather, a superior municipal official or administrative authority directly ordered, scheduled, or approved the systematic destruction of Plaintiff's political expression." 4AC ¶ 62.

**C. February 12, 2024, Displays and Arrest**

On February 12, 2024, Plaintiff conducted a "one-person political demonstration." 4AC ¶ 63. He displayed his legal interpretation of the City's public camping restrictions on a large structure made from wooden pallets and cardboard, measuring three feet by six feet. 4AC ¶¶ 65, 67–70. The display was located off the main walkway to avoid obstructing public foot traffic. 4AC ¶ 66.

Forbes saw the display and sent photographs of it to Officer Omey, informing Omey that Plaintiff was the creator and that Public Works intended to clear it. 4AC ¶¶ 71–75, 133. Then, Plaintiff left the area, and City employees removed the display. 4AC ¶ 76. Upon discovering that his display was confiscated, during the same morning, Plaintiff reconstructed the display using two more wooden pallets. 4AC ¶ 77. Additional Public Works vehicles arrived, and Wilkes began taking down the second display. 4AC ¶¶ 78, 134–35. Plaintiff demanded that Wilkes stop and yelled, "That's my shit. You can't take it," among other expletives; but Wilkes replied that the police authorized the clearing and that Public Works considered the pallets and cardboard to be loose debris and trash. 4AC ¶¶ 79, 96–98.

Then, Plaintiff left the scene to find Wi-Fi to call the police, but before he could do so, Omey arrived and intercepted Plaintiff, ordering him to wait on the curb. 4AC ¶¶ 80–81, 137. Plaintiff explained that his political display was being seized and asked Omey whether Public Works was authorized to do so; Omey replied, "Yeah, absolutely." 4AC ¶¶ 82–83. Omey then arrested Plaintiff and placed him in handcuffs based on an outstanding warrant for Fish and Game Code violations. 4AC ¶¶ 84–87. Plaintiff asked if he was being charged with anything else, and Omey replied that he had to assess the scene first and that he was familiar with Graham's previous interactions with Plaintiff. 4AC ¶¶ 88–89. Plaintiff was then transported to the local jail facility. 4AC ¶ 90.

After Plaintiff was removed from the scene, Wilkes and Forbes continued to take apart the second display and Plaintiff's trailer filled with personal belongings. 4AC ¶¶ 91, 93, 127, 138. Body-worn camera footage documents the conversation between Wilkes, Forbes, and Omey, during which someone stated, "[W]e might need a trailer, you better go grab a trailer," prior to inspecting the contents of Plaintiff's bicycle-trailer. 4AC ¶¶ 135–36. Wilkes and Forbes told Omey that Plaintiff had verbally berated them with explicit language when they were removing the second display and that Forbes had already removed the first display earlier in the morning. 4AC ¶¶ 92–98, 101–02, 112. Wilkes indicated that he wanted to press criminal charges against Plaintiff because of Plaintiff's behavior during the removal of the second display. 4AC ¶ 99. Omey's report identified the repeated contentious interactions with Plaintiff as a basis for escalating the February 12, 2024, incident because Omey concluded that Plaintiff had a history of aggressive behavior towards City employees. 4AC ¶¶ 104–11, 130–32. After speaking with Wilkes and Forbes, Omey's report noted that Plaintiff was being taken into custody for the Fish and Game Code warrant and for disturbing the peace under California Penal Code § 415(3). 4AC ¶¶ 113–14. Later, upon learning from Omey about the charge for disturbing the peace, Pifferini maintained that he did not shout at anybody. 4AC ¶ 114.

Back at the scene, Omey proceeded to deal with Plaintiff's personal property, including the makeshift trailer and its contents, by inventorying the items that could be safely impounded. 4AC ¶¶ 115–20, 122–23. All the property not deemed trash or hazardous was impounded for Pifferini's later collection. 4AC ¶ 120. However, Omey also found hypodermic syringes, some with blood on them, and over two pounds of marijuana. 4AC ¶¶ 118, 124. For health and safety reasons, Wilkes and Forbes disposed of these items. 4AC ¶ 121. City employees then used a reciprocating saw to break apart the trailer. 4AC ¶ 126.

**D. Procedural History**

After nearly two years, this case remains at the pleading stage. Pifferini filed the initial complaint in December 2024, Dkt. 1, and the court ruled on Defendants' motion to dismiss that complaint in August 2025, Dkts. 16 & 26. Since then, Pifferini and Defendants have stipulated to multiple amended complaints to narrow the issues.

Plaintiff filed the 4AC on September 15, 2026, and Defendants filed a motion to dismiss the

4AC on October 13, 2026.

## II. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper when an operative complaint either fails to advance "a cognizable legal theory" or fails to allege "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating 12(b)(6) motions to dismiss, courts must (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive dismissal under these standards, a complaint must contain sufficient factual allegations to establish a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This task "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Plausibility is established where the well-pleaded facts permit the court to infer more than the mere *possibility* of misconduct and show that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 678–79.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires."

## III. DISCUSSION

The 4AC alleges three federal law claims against Defendants: (1) *Monell* liability for the notices to vacate [City only]; (2) First Amendment retaliation and viewpoint-based enforcement [all Defendants]; and (3) Fourth Amendment unreasonable seizure and destruction of property [all Defendants]. Defendants move to dismiss all of Plaintiff's claims for failure to state a claim,



United States District Court
Northern District of California

except the First Amendment viewpoint-based enforcement claim as to the Individual Defendants. Mot. 3.

**A. Individual Defendants**

**1. Claim 2: First Amendment Retaliation and Viewpoint-Based Enforcement**

Pifferini's Second Claim alleges First Amendment retaliation against the Individual Defendants in their individual capacities. Defendants do not move to dismiss the First Amendment viewpoint-based enforcement claim as to the Individual Defendants, so the court need only address the First Amendment retaliation claim against the Individual Defendants. Mot. 3.

"To succeed on a First Amendment retaliation claim, . . . [a] plaintiff must show that: (1) he or she was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Dickinson v. Trump*, 174 F.4th 634, 642 (9th Cir. 2026). The third element requires a plaintiff to establish "a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quotations omitted) (citing *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). A plaintiff can rely on direct and circumstantial evidence, "such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action." *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022).

**a. Wilkes**

Pifferini premises his First Amendment retaliation claim against Wilkes on two allegedly retaliatory actions: (1) removal of the chalk displays with the water truck over three years, and (2) the February 12, 2024, incident. 4AC ¶¶ 166–77. Defendants do not contest that Pifferini was engaged in constitutionally protected speech or that Wilkes' actions had a chilling effect; rather, Defendants argue that Pifferini's speech activities were not "a substantial or motivating factor" in Wilkes' decisions to remove the chalk with the water truck and to dismantle the February 2024



United States District Court
Northern District of California

displays. Mot. 11–12.

First, regarding the water truck, Pifferini sufficiently pleads First Amendment retaliation. Pifferini alleges that "Wilkes frequently observed these chalked political messages while performing his routine duties along the trail system. For a three-year period during the summer months, Wilkes systematically utilized a municipal water truck to wash away Plaintiff's sidewalk messages." 4AC ¶¶ 58–59. These factual allegations are sufficient to state a claim for First Amendment retaliation because they tend to "show that the protected conduct played a part, substantial or otherwise, in the defendant's wrongdoing." *Boquist*, 32 F.4th at 777 (citation modified). The years-long and recurring removal of the chalk messages supports the conclusion that Pifferini has met his burden at the pleading stage, particularly when Pifferini is likely to only have access to circumstantial evidence. Defendants argue that Wilkes was merely maintaining the trails, such that removing the chalk was not intended to limit Pifferini's speech. Mot. 11; *see also* 4AC ¶¶ 169–70 (alleging that Wilkes asked Pifferini to stop writing the messages or move the messages to City Hall to reduce work for City personnel). However, "the mere existence of a legitimate motive, supported though it might be by the [4AC], is insufficient to mandate dismissal." *Capp*, 940 F.3d at 1056. Pifferini's allegations make it at least plausible that Wilkes' actions were motivated by opposition to Pifferini's protected speech—*i.e.,* retaliatory animus was a but-for cause of Wilkes' actions. *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) ("[T]here is a right to be free from retaliation even if a non-retaliatory justification exists for the defendants' action."); *see also* 4AC ¶ 176 ("Wilkes's actions were directed at Plaintiff's political expression and occurred because of, and were substantially motivated by, Plaintiff's continued exercise of First Amendment rights.").

Second, for similar reasons, Pifferini sufficiently pleads First Amendment retaliation against Wilkes regarding the February 2024 displays. Pifferini alleges that Wilkes helped dismantle the second display and that his actions were motivated by Pifferini's protected speech activity. 4AC ¶¶ 78, 134–35, 172, 176. While Pifferini momentarily left the first display, giving Forbes opportunity to dismantle the display, Pifferini quickly reconstructed the display and was present when Wilkes arrived, such that it could not yet be considered abandoned trash. 4AC ¶¶ 71–76, 133. Even though Defendants assert a legitimate motive for destroying the second display based on the determination

United States District Court
Northern District of California

that the pallets and cardboard were trash, 4AC ¶¶ 79, 96–98, 173, Pifferini alleges a prohibited, retaliatory justification, too, *see Capp*, 940 F.3d at 1056. At the pleading stage, Pifferini states a claim for First Amendment retaliation against Wilkes based on both the water truck activity and February 2024 destruction of the second display.

**b. Forbes**

Pifferini's First Amendment retaliation claim against Forbes is based on the February 12, 2024, incident. 4AC ¶¶ 178–86. Again, Defendants only argue that Pifferini's speech activities were not "a substantial or motivating factor" in Forbes' removing the February 2024 displays. Mot. 12.

Pifferini sufficiently pleads First Amendment retaliation against Forbes. Even though Defendants argue that Forbes had a legitimate motive for removing the displays after concluding they were loose trash, Pifferini alleges that Forbes was involved in destroying both displays, including the newly constructed and not-yet-abandoned second display, and that Forbes' actions were directed at Pifferini's speech activity. 4AC ¶¶ 76–78, 179, 183, 185. Forbes also sent photographs of the first display to Omey and identified Pifferini as the creator, which led Omey to escalate the situation. 4AC ¶¶ 71–75, 133, 180. Additionally, "Forbes reported that Plaintiff had erected another sign and pallets and characterized Plaintiff's conduct as a continuing dispute concerning the property." 4AC ¶ 182. Sending a photograph of the first display to Omey, destroying the replacement display, and reporting that "Plaintiff's conduct [was] a continuing dispute concerning the property" all support Pifferini's claim that Forbes was, at least partially, motivated by retaliatory animus towards Pifferini's speech. Again, the legitimate motive of keeping the Waterfront Trail free from trash cannot lead to the dismissal of the claim at the motion to dismiss stage. *See Capp*, 940 F.3d at 1056.

**c. Omey**

Pifferini's First Amendment retaliation claim against Omey is based on the February 12, 2024, incident. 4AC ¶¶ 187–97. Again, Defendants only argue that Pifferini's speech activities were not "a substantial or motivating factor" in Omey's actions concerning the displays. Mot. 9.

Pifferini sufficiently pleads First Amendment retaliation against Omey. To be clear, Pifferini does not allege that Omey helped dismantle either of the displays. Rather, Pifferini alleges that

Omey received photographs of the first display from Forbes and that Omey authorized the Public Works employees to clear the display. 4AC ¶¶ 71–75, 82–83, 133, 191–92. Though circumstantial, the proximity in time between Omey receiving a photo of Pifferini's display, thereby learning of the speech activity, and Omey authorizing the destruction of the display supports the conclusion that Pifferini pleads First Amendment retaliation because it is plausible that Omey's authorization was, at least partly, motivated by retaliatory animus. And again, the legitimate motive of supporting Public Works in keeping the public area free from trash cannot lead to the dismissal of the claim at this stage. *See Capp*, 940 F.3d at 1056. The Opposition brief raises a slew of unpersuasive arguments that do not concern Pifferini's protected speech activity, *see* Opp'n 5–7, which the court need not address, only to say that *Nieves v. Bartlett*, 587 U.S. 391 (2019) is inapposite because that case concerned a retaliatory arrest, which Pifferini does not claim. Regardless, the 4AC states a claim for relief for First Amendment retaliation against Omey.

In sum, Pifferini sufficiently pleads a First Amendment retaliation claim against the Individual Defendants.

**2. Claim 3: Fourth Amendment Unreasonable Seizure and Destruction of Property**

Pifferini's Third Claim alleges Fourth Amendment violations against the Individual Defendants in their individual capacities based on the February 2024 seizure and destruction of some of Pifferini's personal property.

As a threshold matter, Pifferini refashions a portion of his Fourth Amendment claim as a Fourteenth Amendment due process violation for the "immediate destruction of Plaintiff's property." *See* Opp'n 3. However, there is no Fourteenth Amendment claim in the 4AC, and Plaintiff may not use his Opposition to raise and argue new allegations or claims not in the operative complaint. *Minor v. Fedex Off. & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) (citing *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)). Indeed, the First Amended Complaint, Second Amended Complaint, and Third Amended Complaint appear to plead this precise claim, albeit with significantly fewer factual allegations. *See* First Amended Complaint 13, Dkt. 45; Second Amended Complaint 12, Dkt. 48; Third Amended Complaint 4, Dkt.

United States District Court
Northern District of California

57. Accordingly, the court **GRANTS** Pifferini leave to amend for the narrow purpose of adding the Fourteenth Amendment claim concerning the destruction of his property.

Pifferini's Fourth Amendment claim is that the Individual Defendants used an unreasonable amount of force when seizing and destroying his trailer. Police conduct under the Fourth Amendment is determined based on the objective reasonableness standard, and the subjective intent of the individual officers plays no role. *Whren v. United States*, 517 U.S. 806, 813 (1996). While searches incident to a lawful arrest are permissible, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment" by rendering the officer's conduct unreasonable. *United States v. Ramirez*, 523 U.S. 65, 71 (1998).

Pifferini sufficiently pleads a Fourth Amendment claim against the Individual Defendants. After being arrested and removed from the scene to be booked at a local jail facility, Pifferini alleges that the Individual Defendants were all involved in cutting up and destroying his mobile bike trailer using a reciprocating saw. *See* 4AC ¶¶ 205–07 (Wilkes), 211–12 (Forbes), 218–19 (Omey). Defendants argue that the Individual Defendants' actions were objectively reasonable, considering the hazardous materials and contraband found inside the trailer. Reply 4. The Individual Defendants inventoried many items that could be safely impounded, including camping supplies, a crab pot, clothing, and other tools. 4AC ¶¶ 115–20, 122–23. However, they also located hypodermic syringes, some with blood on them, and over two pounds of marijuana, which they disposed of based on health and safety concerns. 4AC ¶¶ 118, 121, 124; *see also* E.M.C. § 130.14(C)(6) and (8) (stating that "personal property placed in a public area [that] poses an immediate threat to the health or safety of the public" and "[e]vidence of a crime or contraband" in a public area "may be removed without prior notice and discarded").

Defendants' arguments, though, go to the issue of whether the Individual Defendants' actions were reasonable, *see* Reply 4, which is not the question at the motion to dismiss stage. Once Pifferini was removed from the scene, the search of his trailer "served [the] limited purpose" of determining which personal property could be safely impounded. *See San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 972 (9th Cir. 2005); *cf. id.* at 972–74 (holding that the officers' "unnecessarily destructive behavior" rendered seizures unreasonable

where the officers had accomplished the warrant's "limited purpose" but then proceeded to seize additional evidence by jackhammering a sidewalk, cutting a mailbox off its post, and removing the door from a refrigerator). Pifferini does not allege that the Individual Defendants' acted unreasonably in their decision to throw away the needles and marijuana. And notably, Defendants do not argue that the Individual Defendants' made a determination that the trailer was a "bulky" item. *See* E.M.C. § 130.14(C)(7). Rather, Pifferini alleges that destroying his trailer using a reciprocating power saw exceeded the scope of the search of the trailer and the selection of what items could be impounded.[3] After removing and sorting the trailer's contents, it is not clear whether it was reasonable for the Individual Defendants to break apart the trailer itself, even if they concluded that the trailer was contaminated by the hazardous materials. Construing the 4AC in the light most favorable to Pifferini, it is plausible that the Individual Defendants' decision and actions were unreasonable, which is sufficient to state a claim for a Fourth Amendment violation.

In sum, Pifferini sufficiently pleads a Fourth Amendment violation against the Individual Defendants. Pifferini is granted leave to amend to add a Fourteenth Amendment due process claim concerning the destruction of his trailer.

**3. Qualified Immunity**

The Individual Defendants also argue that they are entitled to qualified immunity for Claims Two and Three. Mot. 12–13; Reply 7–8.

"In [Section] 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citation modified). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional

[3] Pifferini's Opposition includes a new factual allegation that "less destructive alternatives like towing or standard storage" were available, such that "immediate" destruction of the trailer was unreasonable. Opp'n 4. However, the court's review under Federal Rule of Civil Procedure 12(b) is limited to the operative complaint, and new allegations in an opposition brief are "irrelevant for Rule 12(b)(6) purposes." *Schneider*, 151 F.3d at 1197 n.1.

United States District Court
Northern District of California

right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Krainski v. Nevada*, 616 F.3d 963, 970 (9th Cir. 2010) (citation modified). A right is clearly established "when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). However, "[t]he Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality." *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (citation and quotations omitted). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

**a. First Amendment**

The Individual Defendants are not entitled to qualified immunity on the First Amendment claim at the motion to dismiss stage.

As discussed, the 4AC pleads a plausible First Amendment retaliation claim against the Individual Defendants. And that constitutional right was clearly established at the time of the Individual Defendants' actions because "[r]etaliation for engaging in protected speech has long been prohibited by the First Amendment." *O'Brien*, 818 F.3d at 936. Defendants argue that no clearly established law prohibits "police officers and Public Works employees from removing pallets and cardboard which they considered to be trash from public areas." Mot. 13. However, the Ninth Circuit has "previously made it clear that there is a right to be free from retaliation even if a non-retaliatory justification exists for the defendants' action," *O'Brien*, 818 F.3d at 936, and the court has already determined that Pifferini has plausibly alleged that the Individual Defendants' actions were motivated, at least partially, by intent to chill Pifferini's speech activities. Even though Pifferini does not cite any case in his Opposition to rebut the Individual Defendants' claim of qualified immunity, *see* Opp'n 7, dismissal based on qualified immunity would be inappropriate at the motion to dismiss stage. *See O'Brien*, 818 F.3d at 936 ("Our denial of qualified immunity at this stage of the proceedings does not mean that this case must go to trial. Once an evidentiary record has been

developed through discovery, defendants will be free to move for summary judgment based on qualified immunity."); *see also Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) ("[O]ur decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity were the case permitted to proceed, at least to the summary judgment stage and the court is presented with facts providing context for the challenged actions.") (citation modified).

**b. Fourth Amendment**

The Individual Defendants are not entitled to qualified immunity on the Fourth Amendment claim at the motion to dismiss stage.

Similarly, the 4AC pleads a plausible Fourth Amendment unreasonable destruction of property claim against the Individual Defendants. And that constitutional right was clearly established at the time of the underlying events.[4] *Ramirez*, 523 U.S. at 71 (decided in 1998); *San Jose Charter of Hells Angels*, 402 F.3d at 974 (decided in 2005); *see also Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) (denying qualified immunity for officers who "unnecessarily broke down two doors that were unlocked" during a search); *United States v. Becker*, 929 F.2d 442, 446–47 (9th Cir. 1991) (holding that jackhammering a concrete slab during a search was not unreasonable destruction of property where the agents had reasons to believe that the precise evidence being searched for was buried in the concrete). Again, denial of qualified immunity at this stage does not preclude Defendants from moving for summary judgment on qualified immunity down the road. *See O'Brien*, 818 F.3d at 936.

The Individual Defendants are not entitled to dismissal based on qualified immunity.

**B. City of Eureka**

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under

---

[4] Pifferini's Opposition cites one case in his argument that the Individual Defendants are not entitled to qualified immunity for this claim, and Defendants' Reply focuses on that case. Opp'n 7; Reply 7–8. However, that exchange concerns the Fourteenth Amendment claim that was introduced in the Opposition, which, as discussed, is not properly before the court. *See* Opp'n 7; *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031–33 (9th Cir. 2012).



United States District Court
Northern District of California

§ 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)). "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Furthermore, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Deliberate conduct or indifference is required. *See id.*; *City of Canton*, 489 U.S. at 388–89. Therefore, plaintiffs "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. For this reason, only in rare circumstances will "a single instance of unlawful conduct [be] []sufficient to state a claim for municipal liability . . . ." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021).

**1. Claim 1: Notices to Vacate**

Pifferini's First Claim appears to allege Fourteenth Amendment due process violations arising from discrepancies between Section 130.14 of the Eureka Municipal Code and the notices to vacate. However, Pifferini never explicitly mentions which constitutional right is allegedly being violated by the City's "unconstitutional municipal practice." 4AC ¶ 151; *see Daniels v. Williams*, 474 U.S. 327, 330 (1986) ("But in any given § 1983 suit, the plaintiff must still prove a violation of [an] underlying constitutional right . . . .").

While Defendants' argument concerning a lack of injury-in-fact is persuasive, the court cannot dismiss this claim without leave to amend because Pifferini has failed to allege which constitutional right was violated by the notices to vacate. Accordingly, the First Claim is **DISMISSED** with leave to amend for the narrow purpose of pleading which constitutional right was allegedly violated.

**2. Claim 2: First Amendment Retaliation and Viewpoint-Based Enforcement**

Pifferini's Second Claim alleges *Monell* municipal liability against the City for First

Amendment retaliation and viewpoint-based enforcement arising from the chalk displays and the February 2024 pallet displays.

First, Pifferini states a *Monell* claim for the use of the water truck to remove his chalk displays. Over the course of three years, during the summer months, Wilkes repeatedly removed Pifferini's political chalk messages on the Waterfront Trail sidewalk using a municipal water truck. 4AC ¶¶ 56–60. The 4AC also alleges that, behind the scenes, deployment of a municipal water truck required administrative authorization, which the City logs in its municipal records, such as vehicle tracking, water usage logs, and staff assignments. 4AC ¶ 61. "Given the scale, resource allocation, and multi-year repetition of these erasure operations, [] Wilkes did not act on his own isolated initiative; rather, a superior municipal official or administrative authority directly ordered, scheduled, or approved the systematic destruction of Plaintiff's political expression." 4AC ¶ 62. Having already determined that Pifferini sufficiently pleads First Amendment retaliation against Wilkes, these allegations are adequate to state a *Monell* claim. Pifferini explicitly alleges that the three-years-long removal of his chalk messages required authorization from a supervisor, which is plausible based on the duration and scale of the resource allocation. Defendants argue that the "supervisor" allegation is pure speculation because Pifferini cannot name the supervisor. Mot. 16. However, without any discovery yet, Pifferini's allegations that a supervisor was involved and that using the water truck required administrative authorization are not "unreasonable inferences" for the court to accept as true at the motion to dismiss stage. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.

Second, however, Pifferini does not adequately plead a *Monell* claim for the February 2024 incident. The 4AC alleges that "[t]he enforcement directed against Plaintiff's political expression was undertaken pursuant to, or was caused by, the City's policies, practices, customs, or longstanding methods of enforcement described herein." 4AC ¶ 200. But this statement is "merely conclusory" and does not create a reasonable inference that the destruction of the pallet displays was the result of a City policy. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Crucially, the events giving rise to this claim all occurred within the same morning, and the alleged facts do not state a claim for the rare circumstance of single incident *Monell* liability. *See Benavidez*, 993 F.3d

at 1154 ("life-threatening decisions"); *see also Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1041 (N.D. Cal. 2022) (quoting *Brown*, 520 U.S. at 398) (holding that "municipal liability may be 'triggered by evidence of a single violation of federal rights' when accompanied by a showing of the municipality's failure to train 'its employees to handle recurring situations presenting an obvious potential for such a violation'"). Since the court is already granting leave to amend other issues, the First Amendment claim for *Monell* liability is **DISMISSED** with leave to amend.

**3. Claim 3: Fourth Amendment Unreasonable Seizure and Destruction of Property**

Pifferini's Third Claim alleges *Monell* municipal liability against the City for Fourth Amendment unreasonable destruction of property during his arrest.

As a threshold matter, the court has already granted leave to amend to specifically allege a Fourteenth Amendment violation against the Individual Defendants because the 4AC combines Fourth and Fourteenth amendment language under the caption of the Fourth Amendment. To the extent that Pifferini alleges that the destruction of his trailer lacked due process and that the City, in addition to the Individual Defendants, is liable, Pifferini must allege so in the operative complaint. *See* Opp'n 4–5 (arguing that the destruction of his trailer lacked process). Therefore, Pifferini is **GRANTED** leave to amend to that effect.

Pifferini does not adequately plead a Fourth Amendment claim for *Monell* liability because the claim is premised on a single incident. While the court has already established that Pifferini states a plausible Fourth Amendment claim against the Individual Defendants, no allegations in the 4AC create a reasonable inference that the Individual Defendants were acting pursuant to a City policy "concerning the treatment and disposal of personal property belonging to unhoused individuals in public areas." 4AC ¶ 222. To the extent that Pifferini alleges that the City's notice practices resulted in the alleged Fourth Amendment violation, it is unclear how the notices would impact his claim of unreasonable property destruction because the search was incident to an otherwise lawful arrest, unrelated to a violation of the notices. And as alleged, the Fourth Amendment claim does not rise to the level of the rare circumstance of single incident *Monell* liability. *See Benavidez*, 993 F.3d at 1154; *Est. of Chivrell*, 623 F. Supp. 3d at 1041.

In sum, all of Pifferini's *Monell* liability theories fail to state a claim, except under the Second Claim related to the alleged First Amendment violations from the water truck deployment.

## IV. CONCLUSION

Pifferini's First Claim is DISMISSED with leave to amend to specify which constitutional right has been allegedly violated by the City's notices to vacate.

Pifferini's Second Claim states a plausible First Amendment retaliation claim against the Individual Defendants based on both the water truck and the February 2024 incident. Defendants did not move to dismiss the First Amendment viewpoint-based enforcement claim as to the Individual Defendants. The Second Claim is DISMISSED as against the City with leave to amend concerning the February 2024 incident, but Pifferini adequately alleges municipal liability concerning the water truck.

Pifferini's Third Claim states a plausible Fourth Amendment claim against the Individual Defendants. The Third Claim is DISMISSED as against the City with leave to amend. Relatedly, Pifferini is GRANTED leave to amend to allege a Fourteenth Amendment claim against the Individual Defendants and the City concerning the destruction of his trailer without process.

Discovery on the surviving claims will not begin until after Pifferini files his Fifth Amended Complaint and the court rules on any subsequent motion to dismiss. Considering the limited scope of the leave to amend, Pifferini has twenty-one (21) days from the date of this Order to file an amended complaint. This will be Plaintiff's final amended complaint because the case has lingered at the pleading stage for almost two years.

**IT IS SO ORDERED.**

Dated: November 18, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California